# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEVERLY ANN SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-16-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Beverly Ann Smith requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

-2-

"[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born December 4, 1971, and was forty-two years old at the time of the administrative hearing (Tr. 33, 125). She has a high school education, some college, and a certified nursing assistant license, and has no past relevant work (Tr. 37-38, 142). The claimant alleges that she has been unable to work since July 13, 1999, due to rheumatoid arthritis, degenerative bone disease, osteopenia, and chronic pain (Tr. 141).

### Procedural History

On March 14, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 23, 2014 (Tr. 14-23). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she was limited to frequent handling, fingering, feeling, balancing, stooping, crouching, and interaction with supervisors, co-workers, and the public; occasional reaching overhead, climbing ramps and stairs, use of

hand or foot controls, and kneeling; and could never climb ladders or scaffolds, crawl, work at unprotected heights or around dangerous moving machinery, or be exposed to temperature extremes (Tr. 20). Due to psychologically based symptoms, the ALJ also found the claimant could perform simple tasks and make simple work related decisions (Tr. 20). Due to episodic symptomology, the ALJ further found the claimant would be off task five percent of the workday (Tr. 20). Lastly, the ALJ found the claimant required a sit/stand option every thirty minutes (Tr. 20). The ALJ concluded that the claimant was not disabled because there was work she could perform in the national and regional economies, *i. e.*, document preparer, touchup screener, and suture winder (Tr. 28).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the medical evidence; (ii) perform a proper determination at steps four and five; and (iii) perform a proper credibility determination. The Court finds the claimant's third contention persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of rheumatoid arthritis, diabetes mellitus, reflux disease ("GERD"), migraine headaches, poly neuropathy, depression, anxiety disorder, obesity, obsessive compulsive disorder, schizophrenia, ventral hernia, remote history of pelvic and femur fracture (in 1999), lumbar disc disease, degenerative joint disease of the hands and feet, and hypothyroidism (Tr. 18). The relevant medical evidence reveals that the claimant regularly sought treatment from Dr. Paul Reel between March 2009 and December 2009, and again

between January 2012 and April 2014 (Tr. 333-45, 350-63, 395-401, 425-29, 469-92). Her diagnoses relevant to her disability claim included diabetes mellitus, rheumatoid arthritis, polyneuropathy, and polyarticular joint pain. Dr. Reel's treatment largely consisted of medication management, including pain medicines, immunosuppressants, and steroids. An MRI of the claimant's lumbar spine performed on March 28, 2012, revealed lumbar spondylosis with degenerative changes, and degenerative changes at L5-S1 (Tr. 300). At a follow-up appointment on June 5, 2012, the claimant reported involuntary muscle movements and slurred speech that began after a medication change (Tr. 355). She returned to her original medication, and by November 11, 2012, her symptoms had improved, but were not fully resolved (Tr. 350, 355). There are no further treatments notes regarding involuntary muscle movements or slurred speech in the record after November 11, 2012. On April 29, 2013, the claimant presented paperwork related to her disability claim to Dr. Reel, and reported decreased grip strength as well as problems with walking and balance (Tr. 395). Dr. Reel's physical findings were normal, and he continued her current treatment plan (Tr. 396-97).

Additionally, on April 29, 2013, Dr. Reel completed a medical source statement ("MSS") wherein he opined that the claimant could lift up to five pounds occasionally; could lift six to ten pounds, grasp, push, pull, perform fine manipulation, balance, and stoop less than occasionally; and could never bend, climb, kneel, crouch, or crawl (Tr. 392). He further found she could sit/stand/walk less than two hours per regular work day, and concluded that the claimant was unable to maintain any employment (Tr. 392-94). Dr. Reel indicated his opinions were premised upon the claimant's diagnoses of

speech impairment and tremors, noting these conditions had not been fully evaluated due to the claimant's finances, but that they had progressed over the prior six to twelve months (Tr. 393-94).

The claimant established care with Dr. Thomas Leahey on January 17, 2011, and continued treatment, also largely medication management, through January 9, 2012 (Tr. 249-94, 407-24). X-rays of the claimant's hands, wrists, and feet taken at her initial appointment revealed early rheumatoid arthritis and osteopenia (Tr. 289). Dr. Leahey noted the claimant had flat feet, knock-knee deformity, reduced range of motion in her neck without pain, and normal muscle tone and strength for all groups tested (Tr. 251). He prescribed medications, and ordered home therapy including hot packs, exercises, and walking (Tr. 253). On March 31, 2011, Dr. Leahey noted the claimant had less pain overall and decreased swelling, but that her morning stiffness remained (Tr. 411). At a follow-up appointment on June 6, 2011, the claimant reported no significant flare-ups, but indicated her left wrist was weak and painful (Tr. 417). The claimant also reported her medications were effective, particularly for her hands and feet, and that she was walking longer distances (Tr. 417).

Dr. William Cooper performed a consultative physical examination on May 22, 2012 (Tr. 302-09). He observed that the claimant's gait was slower than normal, but safe and stable (Tr. 305). Dr. Cooper found full range of motion in the claimant's wrists, ankles, and hips, but noted she experienced pain with testing (Tr. 304). Dr. Cooper further found the claimant had full grip strength, and concluded she could perform both gross and fine manipulation with her hands (Tr. 304). Additionally, Dr. Cooper found the

claimant had diminished left rotation and extension, as well as pain with range of motion testing in her cervical spine, but that her thoracic-lumbar spine and lumbar-sacral spine were non-tender with full range of motion (Tr. 304).

State reviewing physician Dr. Randal Reid completed a Physical Residual Functional Capacity Assessment on July 5, 2012, and indicated that the claimant had functional abilities consistent with the full range of light work (Tr. 324-31).

At the administrative hearing, the claimant testified that her rheumatoid arthritis, and medication side effects, including swelling, nausea, fatigue, and dizziness, were the main reasons she could not work (Tr. 38-39). The claimant rated her pain at a five or six on a ten point scale before medication, and at three and one-half after medication (Tr. 43). She stated standing or walking for extended periods of time aggravated her pain, and lying down with her feet elevated relieved it (Tr. 43). The claimant testified that she could sit for one hour, lift and carry a gallon of milk, stand for approximately twenty minutes, and walk approximately five minutes (Tr. 44-46). She further testified that she spends about seven hours per day lying down with her feet elevated (Tr. 54). As to her fatigue, the claimant stated she has to lie down at least once per day, and rated it at an average of five or six on a ten point scale (Tr. 58).

The claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new

guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[3] Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

In summary, the Court finds that the ALJ did not apply correct legal standards, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 2nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.